UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60639-CV-COHN/SELTZER

DOLORES MILLETTE
  Plaintiff,

vs.

**SCANNED**

DEK TECHNOLOGIES, INC., et al.,
  Defendants.
_____/

## OMNIBUS ORDER ON MOTIONS TO DISMISS

THIS CAUSE is before the Court upon Pablo Camus' ("Camus") Motion to
Dismiss Count's I, II, III, IV and V [DE 72] ("Camus Motion"); Nadeau General
Contractors, Inc.'s ("Nadeau") Motion to Dismiss Count VIII of the Amended Complaint
[DE 90] ("Nadeau Motion"); Robert Imperato's ("Imperato") Motion to Dismiss [DE 91]
("Imperato Motion") and Webster Bank, N.A.'s ("Webster Bank") Motion to Dismiss
Counts VI and VII of the Amended Complaint [DE 92] ("Webster Bank Motion").[1]

The Court has considered the Camus Motion, Millette's Memorandum of Law in
Opposition to Defendant Pablo Camus' Motion to Dismiss Amended Complaint [DE
107] ("Millette Response to Camus"), the Nadeau Motion, Millette's Memorandum of
Law In Opposition to Defendant Nadeau General Contractors, Inc.'s Motion to Dismiss
Count VIII [DE 99] ("Millette Response to Nadeau"), the Imperato Motion, Millette's

---

[1] Defendants Steve Lambert ("Lambert") and Steven Cummings ("Cummings")
filed Answers to the Amended Complaint [DEs 83, 93]. Defendant Billie Tarnove
("Tarnove") filed an Answer to the Complaint [DE 5] but did not file an Answer or Motion
to Dismiss the Amended Complaint. Millette recently obtained a Clerk's Default against
Defendant DEK Technologies, Inc. ("DEK") [DE 123].

Memorandum of Law in Opposition to Defendant Robert Imperato's Motion to Dismiss Amended Complaint [DE 98] ("Millette Response to Imperato"), Imperato's Reply [DE 116], the Webster Bank Motion, Millette's Memorandum of Law in Opposition to Defendant Webster Bank's Motion to Dismiss Counts VI and VII of the Amended Complaint [DE 97] ("Millette Response to Webster"), Webster Bank's Reply [DE 117], and is otherwise advised in the premises. On November 24, 2008, the Court heard oral argument on the four Motions to Dismiss.

## I. BACKGROUND

Plaintiff filed a ten-count Amended Complaint. Counts I-III allege federal RICO claims, and Counts IV - X allege state law claims. The Motions to Dismiss seek dismissal of Counts I - VIII. In general, the RICO causes of action (Counts I, II and III) allege that the DEK, Camus, Lambert, Cummings and Imperato (the "Enterprise Defendants") set out to defraud Millette and other North Port lot purchasers by falsely and fraudulently procuring construction agreements and construction loan agreements and then falsely or fraudulently procuring unearned construction loan proceeds from Webster Bank for their own benefit.

In Count IV, fraudulent misrepresentation, Millette alleges that DEK and Camus made several fraudulent misrepresentations to Millette in order to induce her to enter into the Sale and Construction Agreement with DEK and the Construction Loan with Webster Bank, and to apply for periodic construction draws. Millette also alleges that DEK and Camus breached the Construction Agreement (Count V) by failing to deliver a completed single family modular home. In Count VI, breach of contract, Millette alleges that Webster Bank breached the Construction Loan Agreement by approving

2

the initial disbursements in absence of a duly executed note or mortgage, the requisite permits, approvals and title. According to Millette, Webster Bank also breached the contract by approving disbursements based upon known false and falsified draw requests. Alternatively, in Count VII, Millette maintains that the Court should rescind the construction loan documents between Millette and Webster Bank because there were forgeries of Millette's signature and an absolute failure of consideration to Millette. Count VIII alleges negligence against Nadeau and claims that Nadeau held itself out as the general contractor but failed to perform any of the requisite acts or otherwise meet the minimal standard of care in the industry.

## II. ANALYSIS

### A. Motion to Dismiss Standard

Until the Supreme Court decision in Bell Atlantic Corp. v. Twombly, 550 U.S. —, 127 S.Ct. 1955 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Marsh v. Butler County, 268 F.3d 1014, 1022 (11th Cir. 2001). However, pursuant to Twombly, to survive a motion to dismiss, a complaint must now contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." 127 S. Ct. at 1965. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

3

will not do." Id. at 1964-65. Taking the facts as true, a court may grant a motion to

dismiss when, "on the basis of a dispositive issue of law, no construction of the factual

allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty.

Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). Additionally, "conclusory allegations,

unwarranted deductions of facts or legal conclusions masquerading as facts will not

prevent dismissal." Oxford Asset Management, Ltd. v. Jaharis, 297 F.3d 1182, 1188

(11th Cir. 2002) (citing  Management Dist. v. Montalvo, 84 F.3d 402, 406 (11th

Cir.1996); Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir.1993)).

## B.  Civil RICO, Counts I, II and III

To sufficiently allege a RICO claim "a plaintiff must plead (1) that the defendant

(2) through the commission of two or more acts (3) constituting a 'pattern' (4) of

'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or

participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign

commerce." McCulloch v. PNC Bank, Inc., 298 F.3d 1217, 1225 (11th Cir. 2002) (citing

18 U.S.C. §§ 1962 (a) - (c)). Imperato, Webster Bank and Camus' Motions to Dismiss

argue that Plaintiff failed to sufficiently allege the existence of a RICO enterprise or a

pattern of racketeering activity.

### 1. Pattern of Racketeering

To establish a pattern of racketeering plaintiff must allege "(1) that defendants

committed two or more predicate acts within a ten-year time span; (2) the predicate acts

were related to one another; and (3) the predicate acts demonstrated criminal conduct

of a continuing nature." Jackson v. BellSouth Telecommunications, 372 F.3d 1250,

1264 (11th Cir. 2004) (internal quotation omitted). The requirement that the criminal

4

activity be ongoing means that it is not sufficient to simply allege two isolated predicate acts nor can the predicate acts be sporadic, isolated criminal acts. See Id. The continuity element is "crucial to a valid RICO claim to ensure that the crime alleged is the sort of offense that RICO is designed to address - one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future." Id., at 1265.

Continuity of the racketeering activity "is both a closed - and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Jackson, 372 F.3d at 1265 (citing H.J. Inc v. Northwestern Bell Tel. Co., 492 U.S. 229, 241 -242 (1989)). Plaintiff seems to argue that there are sufficient facts under either construction of continuity.

In open-ended RICO cases, plaintiff must establish "either that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future or that the predicate acts or offenses are part of an ongoing entity's regular way of doing business." Jackson, 372 F.3d at 1265 (internal quotations omitted). Plaintiff failed to allege that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future. The question is whether Plaintiff sufficiently alleged that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Plaintiff states that she believes there is a risk of future racketeering activity because of communications between several of the Enterprise Defendants outlining a plan for continued conduct in the future. (Amended Complaint, DE 84, p. 17, ¶ 46; Response to Webster Bank Motion, DE 97, p. 15.) The Amended

Complaint alleges that the "threat of continued criminal activity exists by virtue of other property acquired by the Enterprise Defendants, or some of them, in order to effect a similar three-tiered plan (marketing, mortgage brokering/finance and construction) in the future." (Amended Complaint, DE 84, p. 17, ¶ 46.) Plaintiff avers that Defendants have plans to establish a joint venture with the manufacture of the modular homes, Heartland Home Systems, Inc. to continue to perpetrate their fraud. (Id.) Specifically, Plaintiff alleges that "[c]ommunications between the Enterprise Defendants indicate long-term plans to project their unlawful conduct into the future with additional acquisition of land in Florida and beyond, continued marketing and sale of property and prefabricated modular homes, procurement of construction financing, and home construction." (Id.) The Court finds these conclusory allegations insufficient.  Plaintiff alleged that this scheme was to share in profits from the North Port lots before the Enterprise Defendants were found out.  (Amended Complaint, DE 84, p. 11, ¶ 37.) Plaintiff has not alleged facts that would provide support for an open-ended continuity of the racketeering activity. See e.g. Jackson, 372 F.3d at 1268 ("in spite of plaintiffs' bald suggestion that the defendants might have continue their fraud in the future had they not been uncovered, this is not sufficient to allege open-ended continuity"); Jaharis, 297 F.3d at 1188 ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.")

To allege a close-ended RICO violation, Plaintiff must allege a series of related predicates extending over a substantial period of time.  Ward v. Nierlich, 2008 WL 852789, * 8 (S.D. Fla. March 28, 2008).  There is no definitive demarcation for what constitutes a substantial period of time and the duration element might not always be

6

enough to establish closed-ended continuity when there is only one scheme used to accomplish a discrete goal. Id., at * 9. For example, "one scheme, causing harm to a few victims, and causing one injury does not create close-ended continuity." Id., at * 10; see also Jackson, 372 F.3d at 1267 ("where the RICO allegations concerning only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time"). Plaintiff argues that as to Millette alone, the predicate acts spanned more than 32 months and this is not an insubstantial period of time, thus the continuity requirement for close-ended RICO violations is met. (Response to Webster Bank Motion, DE 97, p. 14 - 15.) Despite the length of time alleged, the Court finds that the activities alleged were one scheme, causing harm to only a few victims in the North Port development, and causing one injury - failure to adequately build the North Port homes despite loan draws. Indeed, Plaintiff alleges that the Enterprise Defendants "anticipated that they would be able to procure lot purchasers and construction loan financing, and share in the deposits and disbursements for all nine lots in North Port, Florida before being found out." (Amended Complaint, DE 84, p.11, ¶ 37.) Pursuant to Judge Moore's reasoning in Ward, there is no closed-ended continuity because it is one scheme used to accomplish a discrete goal. Ward, 2008 WL at *10.

### 2. RICO Enterprise

A RICO enterprise exists "where a group of persons associate, formally or informally, with the purpose of conducting illegal activity." Jackson, 372 F.3d at 1264 (citing United States v. Hewes, 729 F.2d 1302, 1311 (11th Cir.1984)). In some cases the proof used to establish the enterprise and the racketeering pattern requirements

7

may overlap. However, "the possibility of evidentiary overlap does not detract from the fact that the existence of an enterprise remains a separate element." In re Managed Care Litigation, 298 F. Supp. 2d 1259, 1274 (S.D. Fla. 2003). The definitive factor is "the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes. . . ." Id., at 1275 (quoting United States v. Goldin, 219 F.3d 1271, 1274 - 1275 (11th Cir. 2000)).

A RICO enterprise can not be a group simply conspiring to commit a fraud, that is not enough to trigger the Act. In re Managed Care Litigation, 298 F. Supp. 2d at 1274. The parties must be "organized in a fashion that would enable them to function as a racketeering organization for other purposes." Id. (internal quotation omitted). Additionally, when the complaint is founded on commercial relationships between the alleged components of the enterprise, the Plaintiff should "plead facts dispelling the notion that the different parties entered into the alleged agreements for their own gain or benefit." Id. (internal quotation omitted).

Webster Bank, Imperato and Camus' Motions to Dismiss argue that Millette failed to plead the existence of a RICO enterprise separate from the alleged unlawful conspiracy. Defendants argue that other than the limited North Port conspiracy itself, the only activity attributed to the alleged enterprise is the same threatened future conduct. Plaintiff argues that the Amended Complaint withstands dismissal because there are allegations of an informal group of individuals each of whom had a specific role, contributed to the shared illegal purpose, and utilized corporate accounts and corporate trappings of DEK as a vehicle for much of their fraudulent activity. The focus of Plaintiff's response appears to be her argument that the structure of the enterprise is

8

informal and a more formalized structure is not required.

While the Amended Complaint alleges with specificity the actors in the fraud and how it was perpetrated, Plaintiff has not sufficiently alleged a RICO enterprise because it appears that this group of individuals and entities associated only for this project. (Amended Complaint, DE 84, p.11, ¶ 37.) As a result, the alleged "enterprise" was a group simply conspiring to commit a fraud and not functioning as a racketeering organization. In re Managed Care Litigation, 298 F. Supp. 2d at 1274. Furthermore, the actors in this alleged enterprise have commercial relationships and it is not clear whether the parties entered into the alleged agreement for their own gain or benefit. See In re Managed Care Litigation, 298 F. Supp. 2d at 1274.

### C. State Law Causes of Action

Having found that Plaintiff failed to state a federal claim upon which relief can be granted, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.   See 28 U.S.C. §1367(c)(3)[2]; Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006) ("any one of the section 1367(c) factors is sufficient

---

[2] "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

to give the district court discretion to dismiss a case's supplemental state law claims").

III. CONCLUSION

Based on the foregoing it is **ORDERED AND ADJUDGED** as follows:

1.    Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff failed

       to state a cause of action for federal RICO violations alleged in Counts I - III.

       Therefore, Counts I, II and III are **DISMISSED WITH PREJUDICE**.

2.    Counts IV, V, VI, VII, VIII, IX and X allege state law causes of action for which

       the Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C.

       §1367(c)(3). These Counts are **DISMISSED WITHOUT PREJUDICE**.

3.    Pablo Camus' Motion to Dismiss Count's I, II, III, IV and V  [DE 72] is **GRANTED**.

       The federal RICO causes of action (Counts I - III) are dismissed with prejudice.

       The remaining state law claims (Counts IV - V) are dismissed without prejudice

       as the Court declines to exercise supplemental jurisdiction.

4.    Nadeau General Contractors, Inc.'s Motion to Dismiss Count VIII of the

       Amended Complaint [DE 90] is **DENIED AS MOOT.**  The Court declines to

       exercise supplemental jurisdiction over the state law claim (Count VIII).

5.    Robert Imperato's  Motion to Dismiss [DE 91] is **GRANTED**. The federal RICO

       causes of action (Counts I - III) are dismissed with prejudice for failure to state a

       claim.

6.    Webster Bank, N.A.'s Motion to Dismiss Counts VI and VII of the Amended

       Complaint [DE 92] is **GRANTED**.   Since the federal RICO causes of action are

       dismissed with prejudice for failure to state a claim, the Court declines to

10

exercise supplemental jurisdiction over the state law claims set out in Counts VI and VII and these counts are dismissed without prejudice.

7.      By no later than December 15, 2008, Plaintiff shall respond to Webster Bank's oral argument that her Motion for Leave to File Second Amended Complaint [DE 120] should be denied as futile in light of <u>Green v. RBS Nat. Bank</u>, 288 Fed. Appx. 641 (11th Cir. August 4, 2008).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 25th day of November, 2008.

James I. Cohn

JAMES I. COHN
United States District Judge

Copies to:
All Counsel of Record
*Pro se* Parties.