UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-60639-CV-COHN/SELTZER

DOLORES MILLETTE,

    Plaintiff,

vs.

DEK TECHNOLOGIES, INC., et al.,

    Defendants.
_____/

**ORDER DENYING DEFENDANT NADEAU GENERAL CONTRACTOR, INC.'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF DOLORES MILLETTE'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court on Defendant Nadeau General Contractors, Inc.'s Motion for Summary Judgment [DE 252] and Plaintiff Dolores Millette's Motion for Partial Summary Judgment on Defendant Nadeau General Contractors, Inc.'s Affirmative Defenses [DE 253]. The Court has carefully reviewed all of the parties' submissions, heard oral argument on the motions, and is fully advised in the premises.

## I. BACKGROUND

Plaintiff Dolores Millette ("Millette") hired Defendant DEK Technologies, Inc. ("DEK") to purchase a lot for her in North Port, Florida and build her a modular home on that lot ("the North Port Lot"). To further that end, DEK helped Millette obtain a loan from Webster Bank to finance the project ("the Construction Loan"). Thereafter, DEK allegedly diverted more than $230,000.00 in Construction Loan disbursements and left Millette with an incomplete and uninhabitable home. Millette then sued, among others,

DEK and DEK's operator, director, and principal, Pablo Camus ("Camus").[1]  On February 23, 2009, the Court entered a Consent Final Judgment wherein Millette settled with DEK for $400,000 and Camus for $242,000.  See DE 157.

Defendant Nadeau General Contractors, Inc. is owned and operated by Mark Nadeau ("Nadeau").  Nadeau is a general contractor licensed in the State of Florida and is Camus's brother-in-law.  His company, Nadeau General Contractors, Inc. installs glass block in southeast Florida.

Approximately three years ago, Camus approached Nadeau and asked him if he would be willing to use his license to build homes for DEK on the west coast of Florida ("North Port").  Nadeau agreed.  Thereafter, Nadeau signed paperwork at DEK's office.  Nadeau contends the forms were all blank.  Nadeau believed that he was signing the paperwork in anticipation of being hired as the general contractor on the project.

DEK used the signatures to register Nadeau with Webster Bank as the builder of record for the North Port Lot.  Without a registered builder, DEK could not have obtained the Construction Loan.  Nadeau admits that when he asked DEK how he would qualify with the bank as a builder when he'd never built any homes before, DEK told him, before he ever signed any documents in blank, "We'll make it look good to the bank. We'll beef up your resume," and that Nadeau understood that to mean "they were going to falsify things to make it look like I did more than I have."  DE 282, Exhibit 8 at 57-58.

Although DEK registered Nadeau as the builder of record with Webster Bank,

---

[1] DEK was operated by both Camus and Camus's partner, Michael Kirkovich ("Kirkovich").  Kirkovich is not a party to this action.

DEK hired Defendant Steve Cummings to supervise the construction of Millette's home. Because Steve Cummings was not a licensed contractor, Third-Party Defendant Todd Mitchell Smith pulled the construction permits for Millette's home. It is undisputed that Nadeau performed no work in North Port.

Consequently, Millette has brought a claim against Nadeau for common law negligence (Count III). Nadeau now moves for summary judgment on the negligence claim. Millette has moved for partial summary judgment on four of Nadeau's affirmative defenses.

## II. DISCUSSION

### A. Legal Standards

#### 1. Summary Judgment

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### 2. Negligence

To maintain an action for negligence under Florida law, a plaintiff must establish three things: 1) that the defendant owed a duty to the plaintiff; 2) that the defendant breached that duty; and 3) that the breach caused the plaintiff damages. Fla. Dep't of Corrs. v. Abril, 969 So. 2d 201, 204 (Fla. 2007). The Florida Supreme Court has held that while breach, causation, and damages are ordinarily questions for the jury, "duty exists as a matter of law and is not a factual question for the jury to decide." McCain v. Fla. Power Corp., 593 So. 2d 500, 503 (Fla. 1992).

### B. Nadeau's Motion for Summary Judgment

Duty and proximate cause are distinct issues in a negligence case. Florida Power & Light Co. v. Periera, 705 So. 2d 1359, 1361 (Fla. 1998); McCain v. Florida Power Corp., 593 So. 2d 500 (Fla. 1992). "The duty element of negligence focuses on

whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others . . .  The proximate causation element, on the other hand, is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred."  705 So. 2d at 1361 (quoting McCain, 593 So. 2d at 502).  The issue of proximate cause is generally a question of fact, which does not become relevant until it has been established that a duty exists.  See id.

### 1. Nadeau Owed a Duty of Care to Millette

To determine the threshold issue of whether Nadeau owed Millette a duty, we must consider whether Nadeau's conduct created a foreseeable "zone of risk" that posed a general threat of harm to others.  For, "[w]here a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses."  McCain, 593 So. 2d at 504 (citing Kaisner v. Kolb, 543 So. 2d 732, 735 (Fla.1989)).  Foreseeability is a key factor in defining the boundaries of the general duty to avoid negligent acts or omissions.  Id. at 503. "Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others."  Id. The Supreme Court of Florida, when applying the 'foreseeable zone of risk' test, has focused "on the likelihood that a defendant's conduct will result in the type of injury suffered by the plaintiff."  Palm Beach-Broward Medical Imaging Ctr., Inc. v. Continental Grain Co., 715 So. 2d 343, 345 (Fla. Dist. Ct. App. 1998).

Here, a duty exists if Nadeau's conduct created a foreseeable "zone of risk" that

poses a general threat of harm to others. Nadeau's liability for the conduct of DEK therefore depends on whether Nadeau, as a general contractor, could have reasonably foreseen the misuse of his signature, general contractor's license, and insurance information under the particular circumstances presented herein and, further, foreseen the increased danger of injury to the general public should such a misuse occur. Cf. Michael & Philip, Inc. v. Sierra, 776 So. 2d 294, 297 (Fla. Dist. Ct. App. 2000). The Court finds Nadeau could have reasonably foreseen the misuse that occurred under the circumstances of this case. Nadeau, therefore, owed Millette a duty.

### 2. Nadeau's Breach of Duty Is a Question of Fact

The evidence, as discussed above, indicates that Nadeau signed several blank Webster Bank documents, but never took affirmative steps to inform Webster Bank, Millette, or any other party that he would not be working on DEK's project. Thus, whether Nadeau exercised reasonable care in applying his signature, as a general contractor, to blank documents is a factual issue to be determined by the jury.

### 3. Proximate Cause Is a Question of Fact

Millette has adduced evidence that Webster Bank would not have approved her loan without a licensed general contractor signing off on the project. Specifically, Millette has pointed to evidence that "Webster Bank required each loan applicant to document the qualifications of the builder in charge of construction" and that "[a] loan application is deficient if it did not contain the Plans and Specifications Affidavit signed by the builder and the complete Builder Registration Package." DE 279 at 11 (citing DE 283, Exhibit 3 at 34).

It stands to reason that if Webster Bank had not approved the Construction

Loan, then Millette could not have lost the proceeds of that loan.  Put another way, "but for" Nadeau's signatures on the application for the Construction Loan, Webster Bank would not have approved the Construction Loan, and Millette would not have lost her money.

Nadeau asserts that even if he breached a duty of care to Millette by signing blank Webster Bank documents, that breach did not cause Millette's damages because of several intervening causes, including the following: 1) Camus's fraud, 2) Millette's authorization of loan disbursements, and 3) Webster Bank's disbursement of Construction Loan proceeds despite the knowledge that Nadeau was not working as the general contractor/builder on the project.

Nadeau is correct that the doctrine of intervening and superseding cause sometimes stands as a factor in the proximate causation analysis.  Cooke v. Nationwide Mut. Fire Ins. Co., __ So.3d __, 2009 WL 1741370, at *3 (Fla. Dist. Ct. App. 2009).  "Nevertheless, the existence of such an intervening cause – generally the agency, act, or negligence of another, not a defendant in the action – does not always insulate the original negligent actor."  Id.  A negligent actor "is not absolved of liability when his conduct 'sets in motion' a chain of events resulting in injury to the plaintiff."  Gibson v. Avis Rent-A-Car Sys., Inc., 386 So. 2d 520, 522 (Fla. 1980).  "If an intervening cause is foreseeable the original negligent actor may still be held liable. The question of whether an intervening cause is foreseeable is for the trier of fact."  Id.  The Court, therefore, should not decide the proximate cause issue at this stage.  The Court will deny Nadeau's motion for summary judgment.

**C. Millette's Motion for Summary Judgment on Nadeau's Affirmative Defenses**

Nadeau, in its answer to Millette's second amended complaint, asserted six affirmative defenses. See DE 178 at 6. Millette now moves for summary judgment on four of those defenses: 1) comparative negligence, 2) assumption of risk, 3) apportionment of fault, and 4) the doctrine of fraud.

### 1. Comparative Negligence Defense

Tort liability in Florida is premised on pure comparative negligence, which means that a "jury should apportion the negligence of the plaintiff and the negligence of the defendant; then, in reaching the amount due the plaintiff, the jury should give the plaintiff only such an amount proportioned with his negligence and the negligence of the defendant." Garcy v. Dupee, 731 F. Supp. 1582, 1583 (S.D. Fla. 1990) (quoting Hoffman v. Jones, 280 So. 2d 431, 438 (Fla. 1973) (holding that pure comparative negligence rather than contributory negligence is the method of determining and apportioning fault in Florida)). To establish the defense of comparative negligence, a defendant must prove each of the following elements: 1) that plaintiff owed herself a duty of care, 2) that she breached that duty, and 3) that the breach was the proximate cause of the damages she sustained. See Borenstein v. Raskin, 401 So. 2d 884, 886 (Fla. Dist. Ct. App. 1981).

Millette argues that "Nadeau cannot impose upon Millette, the non-delegable duty that is owed precisely to a homeowner by a general contractor." DE 253 at 4. To support her argument, Millette cites Fla. Stat. § 489.1195. "Chapter 489 establishes licensing procedures and regulatory duties for the construction industry and created the Construction Industry Licensing Board to enforce the performance of these procedures

8

and duties." Murthy v. N. Sinha Corp., 644 So. 2d 983, 986 (Fla. 1994) (holding qualifying agent statute creates no private cause of action). Specifically, if a business organization proposes to engage in contracting in Florida, it must apply for a certificate of authority through a qualifying agent. Fla. Stat. § 489.119(2).

Here, Millette has not adduced proof that DEK applied for a certificate of authority through Nadeau. Likewise, Millette has not pointed to any evidence that Nadeau pulled any permits on the project. See Mitchell v. Edge, 598 So. 2d 125, 126 (Fla. Dist. Ct. App. 1992) ("As qualifying contractor . . . primary responsibility was to pull building permits."). Millette has also failed to demonstrate that Nadeau ever represented itself as the general contractor on the project to the city, county, state, or public at large. Millette has adduced no evidence that Nadeau General Contractors, Inc. ever executed a contract with Millette. Indeed, Nadeau General Contractors, Inc.'s name does not even appear in the construction agreement with DEK. Consequently, the statute Millette cites has no application to the facts of this case. Nadeau did not owe Millette a non-delegable duty.

Millette also argues that she cannot be found negligent because she owed herself no duty and that "to establish a defense of comparative negligence, a defendant must establish that the plaintiff shared in the duty of care that is imposed upon the defendant in negligence." Millette's assertion mischaracterizes the law. That is, the law requires only that a defendant establish that the plaintiff owed herself a duty, not that "the plaintiff shared in the duty of care that is imposed upon the defendant."

Millette owed herself a duty to exercise reasonable care in signing documents, purchasing land, and obtaining loans. Signing blank documents, especially in

9

conjunction with a land purchase, construction agreement, and bank loan "creates a foreseeable zone of risk." Consequently, Millette had a duty either to lessen the risk or see that sufficient precautions are taken to protect herself from the harm that the risk poses. Cf. McCain v. Florida Power Corp., 593 So. 2d 500, 504 (Fla. 1992).

A jury should decide whether Millette breached her duty by signing documents without understanding what they were. Similarly, a jury should determine whether the breach of that duty was a cause of Millette's loss. Accordingly, the Court will deny Millette's motion for summary judgment on Nadeau's comparative negligence defense.

### 2. Assumption of Risk Defense

Nadeau, in its response to Millette's motion for partial summary judgment on the affirmative defenses, withdraws its assumption of risk defense. Nadeau recognizes that in Blackburn v. Dorta, 348 So. 2d 287 (Fla. 1977), the Florida Supreme Court held that the defense of implied assumption of the risk was merged with the defense of contributory negligence when the court adopted the doctrine of comparative negligence. The Court will therefore grant Millette's motion for summary judgment on the assumption of risk defense.

### 3. Apportionment of Fault Defense

Nadeau argues that "[p]ursuant to Fabre v. Marin, 623 So. 2d 1182 (Fla. 1993) and Nash v. Wells Fargo Guard Servs., Inc., 678 So. 2d 1262 (Fla. 1996), Defendant is not responsible for Plaintiff's alleged damages, in whole or in part, to the extent that the damages, if any, were caused by the negligence, fault and/or responsibility of Webster Bank, N.A., Pablo Camus, DEK Technologies, Inc., Steven Cummings, and Todd Mitchell Smith." DE 178 at 6. Although Nadeau does not use the phrase

10

"apportionment of fault," the Court construes this affirmative defense as such.

Millette moves for summary judgment on Nadeau's apportionment of fault defense because "Nadeau cannot apportion liability of a non-delegable duty with third parties." DE 253 at 8. Millette, again, bases her argument on § 489.1195, Florida Statutes. Because the statute is inapplicable to the instant case, as set forth above, the Court finds this argument unavailing.

Millette also argues that the court should grant her motion for summary judgment on the apportionment of fault defense for the following reasons: 1) "other parties' negligence is derivative of Nadeau's negligence and not subject to apportionment;" 2) Millette had contractual relationships with the other allegedly negligent parties, so the economic loss rule bars apportionment of fault; and 3) "apportionment is not available to apportion liability where non-parties engaged in intentional torts." DE 253 at 8-9.

### a. Derivative Negligence

Millette correctly asserts that derivative liability is not subject to apportionment. See Grobman v. Posey, 863 So. 2d 1230 (Fla. Dist. Ct. App. 2003). Cases of derivative liability involve wrongful conduct both by the person who is derivatively liable and the actor whose wrongful conduct was the direct cause of injury to another. Id. at 1235. Millette's derivative negligence argument contends that Webster Bank's negligence was derivative of Nadeau's negligence. In other words, Millette asserts that Nadeau's "wrongful conduct" was the "direct cause" of Millette's loss. The facts do not support such an argument.

### b. Economic Loss Rule

Millette argues that the contractual privity economic loss rule prevents Nadeau

from asserting an apportionment defense, not because a contract exists between Millette and Nadeau, but because contracts exist between Millette and other parties that Nadeau seeks to place on the verdict form.  Millette, however, cites no authority to support her argument.  Moreover, upon examination of Florida's contractual privity economic loss rule, it becomes apparent that Millette's argument is unsound.

The contractual privity economic loss rule was designed to prevent parties to a contract from "'circumventing the allocation of losses set forth in their contract by bringing an action for economic loss in tort' and thereby 'seeking to obtain a better bargain than originally made.'"  Cessna Aircraft Co. v. Avior Techs., Inc., 990 So. 2d 532, 537 (Fla. Dist. Ct. App. 2008) (quoting Indemnity Insurance Co. v. American Aviation, Inc., 891 So. 2d 532, 536 (Fla. 2004)).  Thus, the policy that gave rise to the contractual privity economic loss rule – i.e., preventing parties from escaping their contractual remedies – does not support Millette's argument.   There is no logical reason to extend the contractual privity economic loss rule to prevent defendants from apportioning fault between themselves and a negligent third-party, even if the plaintiff could not assert a negligence claim directly against the third-party.  The Court, therefore, will not apply the economic loss rule to bar Nadeau's apportionment of fault defense.

### c. Intentional Torts

Millette argues that apportionment of fault is unavailable where non-parties engaged in intentional torts.  In support of her argument, Millette cites Stellas v. Alamo Rent-A-Car, Inc., 702 So. 2d 232 (Fla. 1997) and Merrill Crossings Assocs. v. McDonald, 705 So. 2d 560 (Fla. 1997).  Stellas and Merrill Crossings both recognize

apportionment of fault does not apply to actions "based upon an intentional tort." Florida Statutes § 768.81(4)(b).

In <u>Merrill Crossings</u>, the defendant unsuccessfully sought to have the jury apportion fault between itself and a tortfeasor who shot the plaintiff in a Wal-Mart parking lot. Although the court in that case disallowed apportionment between the negligent defendant and the intentional tortfeasor, the court allowed apportionment of fault between two negligent parties: Wal-Mart and the property owner. <u>Burns Intern. Sec. Services Inc. of Fla. v. Philadelphia Indem. Ins. Co.</u>, 899 So. 2d 361, 365 (Fla. Dist. Ct. App. 2005) (discussing <u>Merrill Crossings</u>).

Millette has not demonstrated that all of the parties and non-parties that Nadeau names in his affirmative defense committed intentional torts. Thus, to the extent a party or non-party committed an intentional tort, the Court will not allow the jury to apportion fault to that party or non-party. The Court will, on the other hand, allow the jury to apportion fault amongst any parties or non-parties not found to have committed an intentional tort. Cf. <u>Merrill Crossings</u>, 705 So. 2d at 562.

### 4. Fraud Defense

Nadeau asserts that "Plaintiff's claim is barred, in whole or in part, by the doctrine of fraud." DE 178 at 6. "Until there is a determination that Plaintiff is responsible on the loan," Nadeau argues, "it would seem to be unfair to proceed to hold Nadeau responsible for the loan amount." DE 275 at 12-13.

Nadeau raises this argument in light of an action pending in Connecticut state court wherein Webster Bank seeks to hold Millette responsible for the loan. Thus, if Millette prevails in the Connecticut suit, a recovery in this Court produces a windfall.

Nonetheless, Nadeau has cited no case where a court has recognized a fraud defense where the fraud is not the plaintiff's, but a third party's. It would appear that such an affirmative defense is tantamount to requesting apportionment of fault based on a non-party's intentional tort. As demonstrated above, such a defense is unavailable under Florida law. Moreover, to the extent the resolution of the Connecticut case renders any future judgment in this case unjust, Nadeau may move this Court, post-judgment, to modify the judgment pursuant to Federal Rule of Civil Procedure 60(b).

### III. CONCLUSION

In light of the aforementioned, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Nadeau General Contractors, Inc.'s Motion for Summary Judgment [DE 252] is **DENIED**.

2. Plaintiff Dolores Millette's Motion for Partial Summary Judgment on Defendant Nadeau General Contractors, Inc.'s Affirmative Defenses [DE 253] is **GRANTED IN PART AND DENIED IN PART**. The Court grants Plaintiff's motion on Nadeau's assumption of risk defense and fraud defense. The Court denies Plaintiff's motion on the comparative negligence defense and the apportionment of fault defense. Regarding the apportionment of fault defense, the Court will not place intentional tortfeasors on the verdict form for the purposes of apportioning fault.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 6th day of October, 2009.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record.