UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-60639-CV-COHN/SELTZER

DOLORES MILLETTE,

    Plaintiff,

vs.

DEK TECHNOLOGIES, INC., et al.,

    Defendants.

_____/

### ORDER DENYING DEFENDANT TARNOVE'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO STRIKE

**THIS CAUSE** is before the Court on Defendant Billie Tarnove's Motion for Summary Judgment [DE 257] and Plaintiff Dolores Millette's Motion to Strike Portions of Defendant Tarnove's Affidavit in Support of Motion for Summary Judgment and Request for Attorneys Fees Pursuant to 56(g) Fed. R. Civ. P. [DE 293] ("Motion to Strike"). The Court has carefully reviewed all of the parties' submissions, heard oral argument on the Motion for Summary Judgment, and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Dolores Millette ("Millette") hired Defendant DEK Technologies, Inc. ("DEK") to purchase a lot for her in North Port, Florida and build her a modular home on that lot ("the North Port Lot"). To further that end, DEK, on Millette's behalf, purchased the land and obtained a loan from Webster Bank to finance the project ("the Construction Loan"). Thereafter, DEK allegedly diverted more than $230,000.00 in Construction Loan disbursements and left Millette with an incomplete and uninhabitable home. Millette then commenced suit against several parties, including Defendant Billie

Tarnove ("Tarnove").

Tarnove is an attorney admitted to practice law in Florida. In the past, Tarnove represented Camus in real estate transactions and his personal bankruptcy. Tarnove also handled the closing ("Closing") on the North Port Lot. The closing instructions indicated that Construction Loan proceeds were not to be disbursed unless Webster Bank had a first lien. Furthermore, the contract between Millette and DEK required that all pre-existing encumbrances on the North Port Lot be satisfied prior to closing. After closing, however, the North Port Lot remained encumbered by pre-existing mortgages. Although Tarnove eventually satisfied the pre-existing mortgages with proceeds from the Closing, Millette avers that she would not have proceeded with the deal had she been apprised of the title status at the time of Closing. Consequently, Millette's Complaint alleges two counts against Tarnove: 1) professional negligence (Count IV), and 2) breach of fiduciary duty (Count V).

## II. DISCUSSION

### A. Legal Standards

#### 1. Summary Judgment

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must

2

point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

2. Professional Negligence

To maintain an action for professional negligence under Florida law, a plaintiff must establish three things: 1) that the defendant owed a duty to the plaintiff; 2) that the defendant breached that duty; and 3) that the breach caused the plaintiff damages. Fla. Dep't of Corrs. v. Abril, 969 So. 2d 201, 203 (Fla. 2007).  The Florida Supreme Court has held that while breach, causation, and damages are ordinarily questions for the jury, "duty exists as a matter of law and is not a factual question for the jury to

decide." McCain v. Fla. Power Corp., 593 So. 2d 500, 503 (Fla. 1992).

### 3. Breach of Fiduciary Duty

To support a claim for breach of fiduciary duty under Florida law, a plaintiff must establish three things: 1) the existence of a fiduciary duty; 2) the breach of that duty; and 3) the breach is the proximate cause of the plaintiff's damages. Gracey v. Eaker, 837 So. 2d 348, 353 (Fla. 2002) (citations omitted).

## B. Tarnove's Motion for Summary Judgment

### 1. Professional Negligence

Duty and proximate cause are distinct issues in a negligence case. Florida Power & Light Co. v. Periera, 705 So. 2d 1359 (Fla. 1998); McCain v. Florida Power Corp., 593 So. 2d 500 (Fla. 1992). "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others. . . . The proximate causation element, on the other hand, is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." 705 So. 2d at 1361 (quoting McCain, 593 So. 2d at 502). The issue of proximate cause is generally a question of fact, which does not become relevant until it has been established that a duty exists. Id.

#### a. Tarnove Has Not Proved that She Owed No Duty to Millette

Millette asserts that "[a]s the attorney and escrow agent entrusted with the closing of the transactions between Millette, DEK and Webster Bank, Tarnove owed Millette a duty to abide by the standards of care in the legal community and real estate title industry." DE 135 ¶ 63. Millette further alleges that Tarnove breached her duty of

4

care to Millette by "failing to safeguard Millette's interest in clear title to the property and the construction loan proceeds." Id. ¶ 64.  Tarnove's negligent acts – according to Millette – include the following: 1) "failing to safeguard Millette's interest in clear title to the property and the construction loan proceeds[,]" 2) "proceeding to a closing on the sale of real property to Millette where Tarnove knew or should have known that DEK, the seller, did not have clear title," 3) "failing to notify Millette of the title defect," 4) "forwarding to Webster Bank false and falsified loan documents," 5) "[disbursing] initial funds from escrow in the absence of conveyance of clear title and contrary to the instructions of Webster Bank," and 6) "failing to issue Millette an owner's title policy." Id.

Generally, "[a]n attorney's liability for negligence in the performance of his or her professional duties is limited to clients with whom the attorney shares privity of contract." Espinosa v. Sparber, Shevin, Shapo, Rosen and Heilbronner, 612 So. 2d 1378, 1379 (Fla. 1993).  Indeed, "[t]o bring a legal malpractice action, the plaintiff must either be in privity with the attorney, wherein one party has a direct obligation to another, or, alternatively, the plaintiff must be an intended third-party beneficiary." Id. at 1380; see also Angel, Cohen and Rogovin v. Oberon Inv., N.V., 512 So. 2d 192, 194 (Fla. 1987) ("The only instances in Florida where this rule of privity has been relaxed is where it was the apparent intent of the client to benefit a third party.").  "Florida courts have refused to expand the third-party beneficiary exception to include incidental third-party beneficiaries." Id.

Tarnove vigorously disputes whether she is Millette's attorney.  Nonetheless, if Millette was an apparent third-party beneficiary of the attorney-client relationship

5

Tarnove enjoyed with Camus, DEK, or Webster Bank, rather than an incidental third-party beneficiary, then it is irrelevant whether Millette can satisfy the privity rule. Millette has consistently testified that Camus told her he had obtained Tarnove to represent Millette's interests. Thus, even if Millette did not engage Tarnove to represent her, Millette has created a disputed issue of fact regarding whether Tarnove's representation, regardless of who retained it, was retained for the benefit of Millette.

Put another way, Tarnove has not disproved that Millette was an apparent third-party beneficiary of Tarnove's representation. Indeed, if Camus takes the stand at trial and testifies that he hired Tarnove for the specific purpose of representing Millette's interests at closing, and Tarnove takes the stand and testifies that she was never hired to represent Millette, the issue comes down to a credibility determination. A court should not resolve a credibility determination on a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). Tarnove, therefore, has failed to carry her burden on summary judgment that Tarnove owed no duty to Millette.

### b. Whether Tarnove Breach a Duty of Care Is a Question of Fact

Assuming *arguendo* that Tarnove owed Millette a duty of care, the question becomes whether Tarnove breached that duty. Both parties quote the following language in their briefs:

> Generally, the duties of an attorney employed to represent the buyer in a real estate transaction are "to investigate the title to real estate, to make a painstaking examination of the records and to report all facts relating to the title . . . ." and give an opinion on the marketability of the title to the

6

property.

Malliard v. Dowdell, 528 So. 2d 512, 515 (Fla. Dist. Ct. App. 1988) (quoting St. Pius X House of Retreats v. Diocese of Camden, 443 A.2d 1052, 1061 (N.J. 1982).

Tarnove does not dispute that the property was encumbered at the time of closing.  Indeed, Tarnove asserts in her motion for summary judgment that she "ascertained fee simple ownership in [DEK] with two mortgages to be satisfied from the new loan proceeds."  DE 257-02 at 4.  Tarnove may have "ascertained" the existence of two mortgages, but she never asserts that she reported the existence of the two mortgages to Millette.  This failure to report all facts relating to title, standing alone, is enough to support a finding that Tarnove breached the duty she owed to Millette.  Also, Tarnove does not contest Millette's assertion that Tarnove never provided Millette with a title report.  A jury should determine whether this conduct, or lack thereof, constitutes a breach of the duty Tarnove may have owed Millette.

c. Whether Tarnove Proximately Caused Millette's Loss Is a Question of Fact

Tarnove contends that Millette has fee simple absolute ownership of the policy and that to the extent there was a delay in satisfying the existing mortgages, such a delay caused no damages to Millette, for no intervening liens or encumbrances were recorded.  Millette, on the other hand, contends that if she had been notified of the title defects, "she would not have proceeded to Closing, and would have canceled the transaction as was her contractual right."  DE 285; see also DE 283 at 22.

Millette, however, did proceed to closing.  Moreover, "but for" proceeding with closing, Millette would not have suffered a loss in this case.  Tarnove has adduced no proof that Millette would have proceeded with closing had she been fully advised of

7

outstanding encumbrances prior to closing.  Thus, whether Millette would have proceeded to closing had she known about the unsatisfied mortgages is a question of fact to be determined by the jury.

Tarnove argues that even if she was negligent, Tarnove's negligence at closing was not the cause of Millette's loss.  Rather, Tarnove contends, Millette's loss was a result of the negligent and intentional conduct of others related to the construction project on the North Port Lot.  Stated differently, Tarnove asserts that intervening causes are to blame for Millette's loss.

The doctrine of intervening and superseding cause sometimes stands as a factor in the proximate causation analysis.  Cooke v. Nationwide Mut. Fire Ins. Co., __ So.3d __, 2009 WL 1741370, at *3 (Fla. Dist. Ct. App. 2009).  "Nevertheless, the existence of such an intervening cause . . . does not always insulate the original negligent actor." Id. A negligent actor "is not absolved of liability when his conduct 'sets in motion' a chain of events resulting in injury to the plaintiff." Gibson v. Avis Rent-A-Car Sys., Inc., 386 So. 2d 520, 522 (Fla. 1980).  "If an intervening cause is foreseeable the original negligent actor may still be held liable.  The question of whether an intervening cause is foreseeable is for the trier of fact." Id.  The Court, therefore, will not decide at the summary judgment stage whether Tarnove should have foreseen other parties' allegedly negligent and intentionally tortious actions that facilitated Millette's loss.

### 2. Fiduciary Duty

Millette's Complaint also alleges a count against Tarnove for breach of fiduciary duty.  The allegations supporting that count are identical to her allegations for breach of professional duty, save one:  In the breach of fiduciary duty count, Millette also alleges

8

that Tarnove breached her duty of care by "assisting DEK and Camus in fraudulently and falsely procuring and facilitating modification and extension agreements to the detriment of Millette." Complaint ¶ 69.

In her motion for summary judgment, Tarnove does not claim she owed no fiduciary duty to Millette. Rather, Tarnove asserts that "there is no evidence to support any breach of a fiduciary duty nor is there any proof of damages proximately caused by any such claimed breach." DE 257-2 at 8. As to Millette's allegations of breach, quoted above, Tarnove argues that "[n]one of these occurred." DE 257-2 at 9. Tarnove then proceeds to assert the same arguments that she asserts against the professional negligence claim.

Tarnove also contends that she breached no fiduciary duty because "[s]he closed the transaction and disbursed according to the agreed closing statement." Id. The evidence contradicts this contention. Tarnove's closing instructions provided that she should not disburse loan proceeds unless Webster Bank had a valid and perfected first mortgage. DE 257-5 at 2. Tarnove, however, disbursed the loan proceeds months before a pre-existing mortgage on the North Port Lot was satisfied. Thus, Tarnove did not follow the closing instructions. Whether the failure to follow the closing instructions constituted a breach of the fiduciary duty Tarnove owed to Millette is a question of fact for the jury.

Millette also testified that Tarnove forwarded to Webster Bank falsified loan documents. Tarnove responds that she forwarded to the bank only the documents sent to her by Millette. Neither party has submitted persuasive evidence, expert or otherwise, regarding the legitimacy of Millette's signature on the loan documents.

Notwithstanding, Tarnove admitted at her deposition that she did not witness Millette sign the loan documents. Tarnove, however, signed the loan documents as a "witness," thereby falsely representing she witnessed Millette sign the documents. Consequently, whether Tarnove's conduct related to the signatures on the loan documents resulted in a breach of the fiduciary duty she owed to Millette is also a question of fact to be resolved by the jury.

Tarnove's argument regarding the proximate cause element of the breach of fiduciary duty claim is identical to her argument on the professional negligence claim. Thus, for the same reasons articulated in the professional negligence section of this Order, whether Tarnove's breach of the fiduciary duty that she owed to Millette was the proximate cause of Millette's loss is a question of fact for the jury.

### C. Motion to Strike

On September 11, 2009, Plaintiff filed a motion to strike portions of the affidavit that Tarnove filed in support of her motion for summary judgment. Millette seeks to strike averments that 1) Tarnove was not Millette's attorney and 2) Millette owed no professional duty to Millette. Millette takes exception to the averments because Tarnove, in her Answer, admitted the following allegation in the Complaint: "As *the* attorney and escrow agent entrusted with the closing of the transaction between Millette, DEK Technologies and Webster Bank, Tarnove owed Millette a duty to abide by the standards of care in the legal community and real estate title industry." Complaint ¶ 63 (emphasis added).

Rule 56(g) of the Federal Rules of Civil Procedure states, in pertinent part, that "[i]f satisfied that an affidavit under this rule is submitted in bad faith or solely for delay,

the court must order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result." Here, Tarnove's Answer does not admit that Tarnove was *Millette's* attorney. Rather, the Answer admits that Tarnove was *the* attorney entrusted with the closing. This issue is not in dispute. The Answer also admits that Tarnove owed Millette a duty.

The existence of a duty is a question of law. Williams v. Davis, 974 So. 2d 1052, 1057 n.2 (Fla. 2007) ("[T]he existence of a duty under our negligence law is a minimum threshold legal requirement that opens the courthouse doors to the moving party, and is ultimately a question of law for the court rather than a jury."); see also McCain v. Fla. Power Corp., 593 So. 2d 500, 503 (Fla. 1992) ("[D]uty exists as a matter of law and is not a factual question for the jury to decide.").

Tarnove is not bound by an admission or averment of a legal conclusion in her answer. See, e.g., Martin v. Poole, 336 A.2d 363, 365 n.2 (Pa. 1975) ("Although a party is ordinarily bound by admissions of facts, it appears that as a general rule a defendant is not bound by an admission or averment of a legal conclusion in the answer.") (internal quotation omitted) (cited in 71 C.J.S. Pleadings § 196 (2009)); see also United States v. Flournoy Live-Stock & Real-Estate Co., 71 F. 576 (C.C. Neb. 1896) ("Averments in an answer of legal conclusions from admitted facts . . . are not held to be facts properly pleaded, in such sense as to preclude the court from drawing the proper conclusions of law.") (citing Jones v. U.S., 137 U.S. 202, 202-214 (1890); Louisville & N.R. Co. v. Palmes, 109 U.S. 244-253 (1883); Wilson v. Gaines, 103 U.S. 417 (1880); U.S. v. Ames, 99 U.S. 35, 35-45 (1878); Dillon v. Barnard, 88 U.S. (21 Wall.) 430 (1874)). Consequently, the admission in the Answer has little effect and the Court is not "satisfied that the affidavit was submitted in bad faith or solely for delay."

11

III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Billie Tarnove's Motion for Summary Judgment [DE 257] is **DENIED**.

2. Plaintiff Dolores Millette's Motion to Strike Portions of Defendant Tarnove's Affidavit in Support of Motion for Summary Judgment and Request for Attorneys Fees Pursuant to 56(g) Fed. R. Civ. P. [DE 293] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 8th day of October, 2009.

_____
JAMES I. COHN
United States District Judge

Copies provided to counsel of record.