UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  08-60639-CV-COHN/SELTZER

DOLORES MILLETTE,

      Plaintiff,

vs.

DEK TECHNOLOGIES, INC., et al.,

      Defendants.
_____/

**ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW RE: DEFENDANT NADEAU AND DENYING PLAINTIFF'S
MOTION FOR NEW TRIAL RE: DEFENDANT NADEAU**

**THIS CAUSE** is before the Court on Plaintiff Dolores Millette's Renewed Motion

for Judgment as a Matter of Law, and Alternatively, Motion for New Trial as to

Defendant Nadeau General Contractors, Inc. [DE 495] ("Motion").  The Court has

carefully reviewed the Motion, Defendant's response [DE 502], Plaintiff's reply [DE 526],

and is otherwise fully advised in the premises.

I. BACKGROUND

Plaintiff Dolores Millette ("Millette") hired Defendant DEK Technologies, Inc.

("DEK") to purchase a lot for her in North Port, Florida and build her a modular home on

that lot ("the North Port Lot").  To further that end, DEK helped Millette obtain a loan

from Webster Bank to finance the project ("the Construction Loan").  Thereafter, DEK

allegedly diverted more than $230,000.00 in Construction Loan disbursements and left

Millette with an incomplete and uninhabitable home.  Millette then sued, among others,

Nadeau General Contractors, Inc.

Nadeau General Contractors, Inc. is owned and operated by Mark Nadeau

("Nadeau").  Nadeau is a general contractor licensed in the State of Florida.  His

company, Nadeau General Contractors, Inc., installs glass block in southeast Florida.

Approximately three years ago, DEK, via its principal Pablo Camus ("Camus"), approached Nadeau and asked him if he would be willing to use his license to build homes for DEK on the west coast of Florida ("North Port").  Nadeau agreed.  Thereafter, Nadeau signed paperwork at DEK's office.  Nadeau contends the forms were all blank.  Nadeau believed that he was signing the paperwork in anticipation of being hired as the general contractor on the project.   DEK used the signatures to register Nadeau with Webster Bank as the builder of record for the North Port Lot.  Without a registered builder, DEK could not have obtained the Construction Loan.  Nadeau admits that when he asked DEK how he would qualify with the bank as a builder when he'd never built any homes before, DEK told him, before he ever signed any documents in blank, "We'll make it look good to the bank. We'll beef up your resume," and that Nadeau understood that to mean "they were going to falsify things to make it look like I did more than I have."  DE 282, Exhibit 8 at 57-58.

Although DEK registered Nadeau as the builder of record with Webster Bank, DEK hired Defendant Steve Cummings to supervise the construction of Millette's home.  Because Steve Cummings was not a licensed contractor, Third-Party Defendant Todd Mitchell Smith pulled the construction permits for Millette's home.  It is undisputed that Nadeau performed no work in North Port.  As a result, Millette sued Nadeau for negligence.

The Court held a seven-day jury trial.  On November 12, 2009, the jury submitted its Verdict to the Court [DE 471].  In its Verdict, the jury found that Millette had incurred $225,000 in damages and that 5% of the damages were attributable to Nadeau.  Millette now renews her motion for judgment as a matter of law and also moves for a new trial.

## II. DISCUSSION

Federal Rule of Civil Procedure 50(b) governs a motion for judgment as a matter of law.  When ruling on a 50(b) motion, the Court views all of the evidence adduced at trial and draws all reasonable inferences in the light most favorable to the non-moving party.  Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192-93 (11th Cir. 2004).  "The trial judge may not re-weigh the evidence, make credibility determinations or substitute its judgment for that of the jury."  Hudson v. Chertoff, 473 F. Supp. 2d 1279, 1283 (S.D. Fla. 2007) (citing Montgomery v. Noga, 168 F.3d 1282, 1289 (11th Cir. 1999)).

On the other hand, to grant a motion for a new trial, "a trial judge must determine if in his opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."  Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984) (internal citations and quotations omitted).  "[T]o assure that the judge does not simply substitute his judgment for that of the jury, . . . new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence."  Id. (quoting Conway v. Chem. Leaman Tank Lines, Inc., 610 F.2d 360, 363 (5th Cir. 1980)).  Moreover, a motion for a new trial is left to the discretion of the trial court.  Hercaire Int'l, Inc. v. Argentina, 821 F.2d 559, 562 (11th Cir. 1987).  The Court will not grant a motion for a new trial "merely because the losing party can probably present a better case on another trial."  Hudson v. Chertoff, 473 F. Supp. 2d 1279, 1285 (S.D. Fla. 2007).

To support her motion for judgment as a matter of law and, alternatively, motion for a new trial against Nadeau, Millette claims the Court erred by 1) including certain non-parties on the verdict form; 2) instructing the jury on a contractual measure of

damages and failing "to instruct the Jury on certain causation issues as required by

Florida law[;]" and 3) ruling that Millette was prohibited from presenting evidence of the

fraudulent representations by DEK or Camus.  DE 495 at 2.

### 1. Apportionment of Fault

Millette argues that the Court erred in allowing the jury to apportion fault amongst

Nadeau and two non-parties – i.e., DEK/Camus and Webster Bank – because Millette

was in contractual privity with the non-parties.  Millette operates under the mistaken

assumption that because certain non-parties were in contractual privity with Millette,

they "could not owe a duty in tort, and in the absence of a duty, could not be

apportioned fault."  Id. at 5.  To support this argument, Millette cites cases that construe

Florida's economic loss rule.  Millette, however, fails to understand the rule.  As the

Court explained in its order denying in part Plaintiff's motion for summary judgment,

> [t]he contractual privity economic loss rule was designed to prevent
> parties to a contract from "'circumventing the allocation of losses set forth
> in their contract by bringing an action for economic loss in tort' and
> thereby 'seeking to obtain a better bargain than originally made.'"  Cessna
> Aircraft Co. v. Avior Techs., Inc., 990 So. 2d 532, 537 (Fla. Dist. Ct. App.
> 2008) (quoting Indemnity Insurance Co. v. American Aviation, Inc., 891
> So. 2d 532, 536 (Fla. 2004)).  Thus, the policy that gave rise to the
> contractual privity economic loss rule – i.e., preventing parties from
> escaping their contractual remedies [and thereby striking a better deal
> than the one they bargained for] – does not support Millette's argument.
> There is no logical reason to extend the contractual privity economic loss
> rule to prevent defendants from apportioning fault between themselves
> and a negligent third-party, even if the plaintiff could not assert a
> negligence claim directly against the third-party.

DE 343 at 12.  Millette cites no authority that casts doubt on the Court's conclusion.

Rather, Millette cites a long passage from Int'l Star Register of Ill. v. OmniPoint

Marketing, LLC, 510 F. Supp. 2d 1015 (S.D. Fla. 2007).  The undersigned issued that

opinion.  In International Star the Court explained, and Millette now emphasizes, that

"parties to a contractual relationship have allocated their respective rights and remedies

4

and consequently it is inappropriate to introduce tort remedies." Id. at 1025. Millette

continues to fail to grasp the rule's import.[1]

The Court has not allowed Millette "to introduce tort remedies" between parties

that have a contractual relationship. Indeed, had Millette attempted to assert tort claims

against DEK/Camus or Webster Bank that were not based on acts independent from

the acts that breached the parties' contracts, the Court would have dismissed such

claims. The undersigned's opinion in International Star has nothing whatsoever to do

with apportionment of fault pursuant to Florida Statute § 768.81.

As a last ditch effort on this argument, Millette states, "[t]he finding of duty, under

tort, is to be determined as a matter of law and is not left for the jury." DE 495 at 6.

The Court agrees. The Court never instructed the jury to determine whether

Camus/DEK or Webster Bank owed Millette a duty of care.

Millette, however, asserts that "[t]his Court never found the existence of an extra-

contractual duty, under tort, from DEK/Camus and Webster Bank to Millette." Id. at 6-7.

Millette is wrong. The Court found as a matter of law that both DEK/Camus and

Webster Bank owed Millette a duty of care. Otherwise, the Court would not have

placed them on the verdict form.

The Court finds it incontestible that a real estate developer (like DEK/Camus)

who takes a client's money in exchange for the promise to buy a piece of land and build

a home on that piece of land owes a duty of care to the client to exercise reasonable

---

[1]    Millette's inability to assert a negligence action against certain non-parties
does not mean those parties were not negligent. Imagine a classic slip-and-fall case
where it is undisputed that the defendant owed the plaintiff a duty of care, the
defendant breached that duty, and the defendant's breach of that duty caused plaintiff's
injury. But the statute of limitations has run. The running of the statute of limitations
does not render defendant's actions less negligent; rather, it constitutes a bar to
plaintiff's cause of action. Just like the economic loss rule.

care in handling her money and performing his duties.  If the client and real estate developer are in contractual privity, as will most often be the case, the economic loss rule may very well bar the client from suing the developer in tort.  That is not the same as finding no duty exists.  The duty, most certainly, exists.[2]  Furthermore, the Court found that Nadeau presented enough evidence for a jury to find that both DEK/Camus and Webster Bank breached that duty and that Millette suffered damages as a result of the breach.

<u>2. Joint/Concurrent Tortfeasors</u>

Millette argues that the Court should have submitted to the jury the question of whether the non-parties were joint or concurrent tortfeasors with Nadeau.[3]  Essentially,

---

[2]      Likewise, the Court finds it incontestible that a bank owes a duty of care to its customer to exercise reasonable care when handling the customer's funds.  Nonetheless, because the bank and customer are in contractual privity with one another, the economic loss rule may very well bar the client from suing the developer in tort.

[3]      In its motion for a new trial, Millette cites <u>McCain v. Fla. Power Corp.</u>, 593 So. 2d 500, 503 (Fla. 1992), for the proposition that "[t]he determination of whether defendants are joint tortfeasors is a question of fact for the jury."  <u>See</u> DE 495 at 7.  <u>McCain</u> does not support that proposition.  Indeed, the word "joint" does not even appear in the opinion.  <u>See id.</u>  Nor does the word "concurrent" or "tortfeasor."  <u>See id.</u>  That said, Millette's position has some support in the case law.  For example, in <u>Letzer v. Cephas</u>, a Florida District Court of Appeals stated the following:

"'Joint tortfeasors' are defined as '[t]hose who act together in committing wrong, or whose acts if independent of each other, unite in causing single injury.'"  <u>Ass'n for Retarded Citizens-Volusia, Inc. v. Fletcher</u>, 741 So. 2d 520, 530 n.3 (Fla. 5th DCA 1999) (Harris, J., dissenting) (quoting Black's Law Dictionary 752-53 (5th ed. 1979).  "In order to be joint tort-feasors in fact, each tort-feasor must have committed some wrong which results in an injury or damage to another.  Although there is but a single damage done, there are several wrongs."  <u>Phillips v. Hall</u>, 297 So.2d 136, 139 (Fla. 1st DCA 1974) (Boyer, J., concurring specially).  Whether or not defendants are joint tortfeasors is a question of fact determined by the circumstances of the particular case.  <u>See Sands v. Wilson</u>, 140 Fla. 18, 191 So. 21, 23 (1939).

<u>Letzer v. Cephas</u>, 792 So. 2d 481, 486 (Fla. Dist. Ct. App. 2001).

Millette argues that Nadeau caused Millette's injury and all the other parties aggravated the injury caused by Nadeau.[4]  The evidence undermines Millette's argument.  Millette offered no evidence that the various parties and non-parties caused distinct injuries.  To the contrary, the evidence showed that Millette suffered a single injury: she did not get the house that she bargained for.  Based on the facts presented by the parties, no reasonable fact-finder could conclude that Millette suffered more than a single injury.[5]  Thus, the Court finds no error in refusing to submit the question to the jury.

3. Causation & Damages Instructions

Millette complains that "the Court failed to properly instruct the jury regarding all theories of causation and the proper measure of damages."  DE 495 at 10-11.  According to Millette, "the jury should have been instructed on the conflicting theories of causation that would have rendered apportionment inappropriate."  Id. at 11.  Specifically, Millette contends that the Court should have instructed the jury on intervening cause.  Millette further contends, "[t]he Court should have offered the standard negligence damages instruction as requested by the parties and the failure to do so requires a new trial."

The Court fails to see how an instruction on intervening cause could possibly

---

[4]     All of the cases Millette relies upon are medical malpractice cases wherein a doctor injures a patient, the patient seeks follow-up care from another doctor, and the second doctor aggravates the injury caused by the first doctor.  Those cases are inapposite to the facts here.

[5]     For example, had DEK/Camus built Millette the house she bargained for, Nadeau's negligence would have caused no injury.  Likewise, had Webster Bank refused to disburse funds, knowing that Nadeau was not working on the North Port Lot, Millette would not have suffered the injury she complained of.  Likewise, Smith and Cummings did not aggravate an injury that already existed; rather, if Smith and Cummings had built a proper house, Nadeau's negligence would have caused no injury.  Stated differently, several parties and non-parties made poor decisions that led to Millette's single, indivisible injury.  Because Millette offered no evidence of separate or distinct injuries, the Court could not submit the issue to the jury.

help Millette.  Had the jury found an intervening cause that cut off Nadeau's liability, the jury would have found Nadeau non-negligent.  Notwithstanding, the Court found no evidence to support an instruction on intervening cause.  Thus, the Court's decision not to give an instruction on intervening cause constitutes no error.

As to the damages instruction, Plaintiff offers no reason that the Court's damages instruction failed to account for Millette's actual damages.  Moreover, Plaintiff has not demonstrated how the jury instructions – even if improper – resulted in a verdict against the great weight of the evidence.[6]

### 4. Evidence of Fraudulent Misrepresentations

Millette argues that "the Court prevented Millette from presenting [testimony] regarding the numerous fraudulent misrepresentations by DEK and Camus in connection with the Construction Agreement."  DE 495 at 11.  The Court has a different recollection.  The Court did not prevent Millette from presenting evidence "regarding the numerous fraudulent misrepresentations by DEK and Camus in connection with the Construction Agreement."  Furthermore, Millette cites no trial transcript or other evidence that suggests otherwise.  The Court, therefore, summarily rejects this argument.

Because Millette has failed to demonstrate either that the Court's denial of her Rule 50(b) motion was in error, that the verdict is against the clear weight of the evidence, or that the verdict resulted in a miscarriage of justice, the Court will deny Millette's Renewed Motion for Judgment as a Matter of Law, and Alternatively, Motion for New Trial as to Defendant Nadeau General Contractors, Inc.

---

[6]      Millette, in her reply, raises new arguments concerning allegedly erroneous jury instructions.  The Court will not entertain arguments raised for the first time in a reply.

III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff Dolores

Millette's Renewed Motion for Judgment as a Matter of Law, and Alternatively, Motion

for New Trial as to Defendant Nadeau General Contractors, Inc. [DE 495]  is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 8th day of February, 2010.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record.